# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. GLANTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 08-638 |
| ) | |
| v. ) | Magistrate Judge Bissoon[1] |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 10) will be granted, and Plaintiff's Motion for Summary Judgment (Doc. 5) will be denied.

Plaintiff James E. Glanton ("Claimant") has filed this social security appeal, challenging the ALJ's decision dated October 5, 2007. *See generally* Compl. (Doc. 1); ALJ's Decision, R. at 14-24. Claimant seeks disability insurance benefits ("DIB"), and he must demonstrate disability on or before June 30, 2005. *See* ALJ's Decision, R. at 14 (holding same based on Claimant's earning records).

The ALJ found that Claimant suffered the severe impairments of complex regional pain syndrome and obesity, but that these conditions did not, as of June 30, 2005, preclude Claimant from performing a limited range of sedentary work. *See* ALJ's Decision, R. at 16-17. The vocational expert testified that an individual with Claimant's limitations could perform jobs

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docs. 8 & 9).

existing in significant numbers in the national economy, and the ALJ found Claimant not disabled at step five of the sequential analysis. *See id.*

Having carefully reviewed the entire record, the undersigned concludes that the ALJ's decision was neither erroneous nor unsupported by substantial evidence. Accordingly, the Court will limit its discussion to the points of error alleged by Claimant.

Nearly all of Claimant's arguments derive from the progressive nature of his complex regional pain syndrome ("CRPS"). *See generally* Pl.'s Br. (Doc. 6) at 1. This focus is understandable, given Claimant's post-coverage medical evidence that his condition has deteriorated. *See, e.g.*, Rpt. of Dr. Cheryl Bernstein dated Jun. 5, 2007 (R. at 270-71) (Claimant's "restrictions are [so] significant that even simple intermittent tasks using his hands would exacerbate [the] pain and swelling" in "his upper extremities").

A longitudinal review of the medical evidence regarding Claimant's residual functional capacity ("RFC"), before and after his date last insured, is appropriate:

- On November 26, 2002, treating physician Richard Katz found Claimant "permanently . . . unable to work as a construction laborer or in any [other] job position requiring the forceful use of his upper extremities," R. at 207;

- On May 23, 2003, Dr. Katz opined that Claimant was "capable of working in a sedentary job position . . . requir[ing] no more than the occasional lifting of objects weighing up to 10 lbs. using both hands together," no "continuous, forceful, or rapid use of [his] hands," no crawling, use of "vibrating tools," exposure of his "upper extremities to substantially cool conditions for a substantial . . . time," and no driving for more than one hour at a time, R. at 245;

- On July 26, 2004, Dr. Katz "agreed" that Claimant should perform "some housework and gardening," assuming "the activities [did] not require the forceful use of his upper extremities"; the physician "indicated that there is some evidence that reasonable use of an upper extremity affected

> by a CRP[S] may be of benefit in either diminishing the
> intensity of the disorder or at least keeping it from
> progressing," R. at 177-78;

- On December 1, 2004, SSA consultative examiner
  Dr. Shelana Gibbs-McElvy opined that Claimant could
  engage in less than the full range of sedentary work, and
  she imposed limitations less restrictive than Dr. Katz's
  May 23, 2003 RFC, *compare* R. at 210 *with* ALJ's
  Decision, R. at 22 (adopting treating physician Dr. Katz's
  "more restrictive RFC");[2]

- On May 11, 2005, Dr. Katz recorded his final treatment
  report for Claimant, given the physician's impeding
  retirement; nowhere in this or his other intervening reports
  did Dr. Katz indicate that his May 23, 2003 RFC
  assessment had changed, *see* R. at 223-24;

- On June 30, 2005, Claimant's DIB coverage expired,
  *see* discussion *supra*;

- On October 11, October 31, and November 28, 2005,
  new treating physician Dr. Bernstein indicated Claimant
  "want[ed] to return to work if he ha[d] less pain," and she
  indicated her belief that "the patient would benefit from
  seeking [vocational rehabilitation] to be retrained in
  something that he can physically do," *see* R. at 241-42;
  *see also id.* at 237 & 239;

- On February 20, 2006, Dr. Bernstein completed at
  Claimant's behest a Pennsylvania tax form indicating that
  he was "totally disabled" under the Social Security Act,
  R. at 233; the only explanation the physician offered was
  that Claimant was "unable to use hands and unable to work
  [secondary] to severe pain from [CRPS]," *id.*; and

---

[2] In a footnote, Claimant's counsel argues that the ALJ erred in concluding Dr. Gibbs-McElvy opined Claimant was "unlimited" in his ability to push or pull. *See* Pl.'s Br. (Doc. 6) at 14 n.5. This argument is somewhat disingenuous, because Dr. Gibbs-McElvy's narrative merely tracked a standard SSA form used to address claimants' RFC. *See* R. at 214 (RFC form completed by Dr. Gibbs-McElvy, checking box under "pushing and pulling" to indicate Claimant was "[u]nlimited, other than shown under lifting and carrying"). In any event, the RFC adopted by the ALJ accounted for Claimant's lifting and carrying restrictions, and counsel's argument is without merit.

- In June 2007, Dr. Bernstein prepared for Claimant's counsel a report concluding that she "[did] not recommend [a] return to work at this time." R. at 271.

Based on this and other evidence, the ALJ adopted an RFC assessment consistent with treating physician Dr. Katz's reports, which permitted less than the full range of sedentary work. *Compare* ALJ's Decision, R. at 17 *with* Dr. Katz's May 23, 2003 report (R. at 245). In so ruling, the ALJ afforded less weight to the findings of consultative examiner Dr. Gibbs-McElvy, who found Claimant capable of performing a slightly broader range of sedentary work. *See* discussion *supra*.

As for Dr. Bernstein's later opinions of disability, offered over eight and twenty-five months after Claimant's DIB coverage expired, respectively, the ALJ noted that these reports did not reflect Claimant's condition on or before June 30, 2005. *See* ALJ's Decision, R. at 22-23; *see also id.* at 22 ("the contemporaneous opinion[s] of . . . treating physician [Dr. Katz were] presumably more reliable"). The ALJ also discounted Dr. Bernstein's opinions because they lacked the support of "medically recognized objective diagnostic techniques" and "appear[ed] to rest heavily on [Claimant's] subjective assertions." *Id.* at 22. In weighing the medical evidence, the ALJ acted within the scope of his authority. *See* Plummer v. Apfel, 186 F.3d 422, 430 (3d Cir. 1999) ("the Commissioner has an obligation to weigh medical evidence and make choices between conflicting accounts"; "an unsupported diagnosis is not entitled to significant weight"; and "an ALJ may reject [a] treating physician's opinion on [the] basis of contradictory medical evidence") (citations omitted).

The only other issue warranting comment is Claimant's citation to law regarding degenerative conditions. In Walton v. Halter, the Court of Appeals for the Third Circuit noted:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and <u>adequate medical records are not available</u>. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
> . . .
>
> [I]f the medical evidence is ambiguous and a retroactive inference is necessary, the ALJ must call upon the services of a medical advisor to insure that the [onset] determination has a legitimate medical basis.

*Id.*, 243 F.3d 703, 708-709 (3d Cir. 2001) (citations and internal quotations omitted, emphasis added).

The Court finds that, in this case, there was insufficient ambiguity regarding Claimant's onset date to compel the ALJ's engagement of a medical advisor. "Adequate medical [reports]" were available, and the record neither stated nor implied that Claimant became disabled prior to the expiration of his DIB coverage.

To the contrary, treating physician Dr. Katz monitored Claimant's condition until May 2005, the month before his DIB coverage expired, and nothing in the physician's reports indicated that Claimant could not perform a limited range of sedentary work. It was this doctor's RFC the ALJ adopted, and the Court finds no basis for demanding a retroactive inference.

This conclusion is bolstered by Dr. Bernstein's post-DIB-coverage reports indicating that Claimant "would benefit from seeking [vocational rehabilitation] to be retrained in something that he can physically do." *See* discussion *supra*. The earliest date that Dr. Bernstein indicated Claimant's impairments precluded employment was February 20, 2006, over eight months after the expiration of Claimant's DIB coverage.

5

Nothing in the record suggests that more evidence was necessary for the ALJ to conclude that Claimant could perform a limited range of sedentary work as of June 2005, and Claimant's arguments regarding the progressive nature of his impairment are unavailing.

Finally, Claimant challenges the ALJ's reliance on the vocational expert's testimony:

> The ALJ credited the vocational expert's testimony that [Claimant] had the ability to perform the jobs of telephone order clerk and credit checker. However, [Claimant] testified regarding the limit[ed] use of his hands and fingers, and there was nothing in the medical evidence to contradict these representations. The vocational expert opined that the performance of these jobs required manipulation of the hands and fingers on an "occasional to frequent" basis. Therefore, the ALJ's finding that [Claimant] could perform these jobs is not supported by substantial evidence.
>
> The ALJ's finding that [Claimant] could . . . perform the job of surveillance alarm monitor is also not supported by substantial evidence based upon the longitudinally medically documented and determined findings and opinions that [his CRPS] cause[d] nonexertional as well as exertional and disabling pain in the upper extremities.

Pl.'s Br. at 19.

To the extent counsel argues that the hypothetical questions presented to the vocational expert did not account for Claimant's subjective complaints at the hearing, the ALJ found Claimant's testimony to be less than fully credible. *See* ALJ's Decision, R. at 21. The ALJ provided explanations for his credibility determination; Claimant does not meaningfully dispute them here; and the Court finds the ALJ's credibility determination supported by substantial evidence.

Otherwise, the limitations presented to the vocational expert were materially identical to those found by Claimant's own treating physician, Dr. Katz, and the vocational expert opined

that Claimant could perform jobs existing in significant numbers in the national economy. *See generally* ALJ's Decision, R. at 24.

All of Claimant's remaining arguments are rejected, explicitly or by implication, through the analyses above. Accordingly, Defendant's Motion for Summary Judgment will be granted.

For the reasons stated above, the Court enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 5**) is **DENIED**, and Defendant's Motion for Summary Judgment (**Doc. 10**) is **GRANTED**.

IT IS SO ORDERED.


February 20, 2009                                  s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States Magistrate Judge
cc (via email):

Charles C. Bell, Esq.
Paul Kovac, Esq.